Good morning, Your Honor. Good morning. Good morning, Your Honors, and may it please the Court, Nicholas Jimenez, appearing for Appellant James Murphy. This case should be remanded and sent back to the District Court for re-sentencing for three reasons. First is the issue of loss. The District Court erred in finding $1.49 million in losses in this case, primarily because the Court relied on an intended loss theory. And what happened was, Dr. Murphy submitted three of the counts of convictions were the submission of these refund requests to the IRS in varying amounts for $300,000, $400,000, and another for $300,000. And what the Court did was, and there's no dispute over the fact that in some of the earlier counts and some of the earlier conduct that isn't before the Court in this appeal, he did accrue about approximately $165,000 in tax debt. And I'll address that when I get to the restitution argument. But as to these other counts, this money wasn't paid by the IRS to Dr. Murphy. The forms were submitted. But counsel, with respect, isn't the law that it's what he claimed on the form that is the measure of damages here. And I know he stamped on each of the pages that it was supposed to be an offset. But nonetheless, the figure that would have been offset if he'd been successful was the very figure he is now saying we should not look to. How does that help you? The Court is correct, Your Honor, in that the guideline, I believe it's 2T1.1, says that in the case of refunds, the Court should look to the claim for the refund that was It's our position that it's still an intended loss analysis because the loss never materialized. But he intended it to. He asked for that refund. So I don't understand your argument on this. And I appreciate the Court's question because that's where we ask the Court to look at the Manitow decision because I think in the intended loss context, there has to be some sort of making this claim. And that's where I pointed to the Court, the stamp that was on these documents. But the trier of fact and the judge in imposing, in calculating intended loss could say, no, that was baloney. That was verbiage that was very obscure and contentious. And he didn't really want an offset that we disregard that. Why? And on appeal, we have to take all the facts most favorably to the government. Yes? I certainly agree with Your Honor that the district court could have certainly said, yes, that was bogus language. And I don't believe that. I believe you intended it. But the fact of the matter is that didn't happen in this case in either the first or the second sentencing. It was just taken as true that But I think it's probably because the district court didn't even understand it. I mean, isn't this coming from this paragraph, the accepted for value, returned for value without dishonor language that is just incoherent? It is incoherent, Your Honor. But I think the proper analysis, though, is there has to be, and that's where we point to Manitow, there have to be findings from the district court to say, well, you had the heightened mens rea to want to get this money specifically if the court had questions. And I think the confusion adds to the fact that it's not entirely clear that he wanted this refund to be paid to him just from the state of the documents that With respect, as I said a few minutes ago, I think the case law and the regulations provide that the amount that he lists, the amount, the claim he's making is all that you need there. If you, whatever, however you construe the language on each separate page, that would have been meaningless under any circumstances unless the amount he claimed on the requisite line was going to be applied against it. I don't think this is a helpful argument to you. You may have some better arguments. May I respectfully suggest that you move to that? Absolutely, Your Honor. I'll move on. Our second argument is on the obstruction of justice enhancement. The issue there was that if the court looks at the guideline, 3C1.1, I believe it is, the obstruction guideline lists and the commentary lists a number of points where there has to be a finding when the obstruction is made purportedly to a law enforcement officer. It has to be a rise to the level of significant impediment to the investigation or the prosecution. And there was never any finding that that rose to the level here in this case. In fact, there were no findings of either the first or second sentencing why the enhancement was necessary in the first place. The only thing the court said was, I think this is a complex scheme. These documents are very confusing. I'm imposing the enhancement for obstruction and imposing sophisticated means as well. So it imposed a plus four level enhancement on these same grounds. Did the PSR talk about the letters threatening the IRS agent? The PSR did talk about the letters threatening the IRS agent. So why can't we assume the district court was relying on that? And what's insufficient about that if we do assume that? That wouldn't be insufficient, Your Honor. But the thing is, the court at no time at the court say, I'm adopting the factual findings of the PSR on this point. The court just said, no, I think. But this came in the context of the judge said, now we have two, quote, then we have a plus two sophisticated means plus two obstruction. And are there objections on those as well, Mr. Coleman? And defense counsel then only argued about the sophisticated means. So the judge, why wasn't the judge justified in assuming, well, you're not really challenging any further the obstruction, you're just challenging sophisticated means. And here's why I find there was sophisticated means. Well, Your Honor, the obstruction enhancement was objected to in writing extensively. No, I understand that. But now, you know, lots of things you put into your memo and so forth. But now the judge is specifically saying, okay, I've read your stuff. You're before me now. Tell me what it is that you object to on these two different adjustments. And counsel on both sides only talk about the sophisticated means. And so the judge only makes findings as to sophisticated means. You say he should have said, well, even though you haven't said one word, defense counsel, about the obstruction, I make the following findings on obstruction. Why does the judge have to do that? Well, Your Honor, I feel like to the extent that the court is going to impose an enhancement at the time of explaining, at the time the court finally imposes sentence, I think the particular enhancement, regardless of the fact that defense counsel decided not to argue that. Well, but as Judge Friedland pointed out, we have the basis in the PSR. So it's not like the basis hadn't been laid out. Supposing defense counsel had said we withdraw any further objections, then he wouldn't have had to make any further findings, would he? I'd agree at that point, no. So why wasn't this the functional equivalent of that? Well, the issue was the defense counsel argued what he felt was going to be persuasive to that judge at that particular moment. And obviously the transcript the court has excludes the first maybe three hours of that hearing, which was the co-defendant. So I guess at that point, defense counsel wanted to argue the strongest points. I don't think it was defense counsel's intent to waive the objection that had been filed in writing. But wouldn't they, wouldn't defense counsel normally say that, Judge, I rest all my papers on the other part, but they didn't. And I don't have it at hand, Your Honor, but I believe that was said at some point. Counsel, following up on what Judge Rakow talked about, but in a slightly different vein, did you argue that this was a, if you did not offer it to the district court, in my recollection, it's the same. Can you raise that at this point? I don't know if you did in your brief, but can you raise it at this point? It's illegal to double count the same facts, but did you waive that? Well, Your Honor, I think the intent before the district court was for neither enhancement to be imposed. I don't think we argued in the alternative that if one were imposed, then the other shouldn't be imposed because of double counting concerns. I think to the extent that the obstruction of justice enhancement would have been based on the, would have been based on the particular threatening letter sent to the IRS officer, then it wouldn't have been the same concern. And then there's no double counting anyway, right? Right. Can I ask you a question about your last argument about the general verdict? I think that issue is on plain error, and I'm just wondering whether you have an argument that the restitution amount is definitely wrong, or whether your argument is just it might be wrong because it's not adequately supported. I think our argument is stronger by saying that there's just no, at least on count one is where we're concerned, because as the court notes, that count encompassed a broad range of conduct that there's really no way to tell from the record what the restitution is. So you can't say this is definitely a plain error because the number is definitely wrong. You just say we don't know. We don't know. That's right. I've gone on to other questions by my colleagues. Thank you, counsel. Thank you. We'll hear from the government. May it please the court. Daniel Zip on behalf of the United States. Briefly as to the first issue, one additional point I'd like to make is when the defendant submitted those requests for refunds, he included a routing number and his own checking account for the money to come back. An IRS agent testified that in fact the IRS has mistakenly paid these same OID forms before. And there was a case in our sentencing memo from the Northern District of California where a defendant actually got $5 million from the IRS submitting these same OID forms. So given the language of the guidelines and the clear evidence that this was a request for a refund, the district court did not err, much less clearly err in applying 2T1.1. As to the obstruction of justice, again, the court was well within its discretion in imposing that enhancement. It was barely addressed by the parties below, but as Your Honor noted, in the PSR there was mention of these threatening letters sent to the IRS agents. And realistically, the entire trial was about obstruction. From start to finish, this defendant, starting in 2006, his first letter to the IRS agent requested her to send back a certified copy of her driver's license. And then there was years of correspondence and counterfeit documents and essentially obstructive conduct throughout. And the district court saw all of that in court and was well within its discretion in determining that that... Was there any evidence that any of those submissions actually impeded the investigation? Or were they just disregarded? This is some kind of crazy person, we'll just, you know, we hit these kinds of letters all the time, we'll just disregard it? I think there was in that it impeded the civil audit. And this court in Yip held that actions taken to impede a civil audit can be used in the criminal context for obstruction of justice. This was a case where the IRS first learned of this defendant's sort of trust scheme after he participated in a conference in Las Vegas that was eventually a number of people were arrested at. So at the very beginning of the investigation, their intent was simply to have him turn over the books and say, let's run an audit on your books and see what your taxes should have been in 2001 through 2004. So to the extent that the civil audit was simply trying to get to the bottom of what his tax liability was, yes, the fact that he engaged in four or five years of relentless obstructive correspondence and counterfeiting and threatening letters with the IRS agent certainly did impede what In light of McHenry applying Huey, how is the restitution order permissible if there's only a general verdict? My colleague briefly mentioned that before. Well, I think, Your Honor, in this case, there was four different counts of conviction. The three under the Mandatory Victim Restitution Act under Title 18 were all directly tied to the false claims that the defendant was convicted of. I guess I'm not sure as to the general verdict on count one, there was certainly evidence throughout trial about the specific amounts of money that were earned by this defendant in specific calendar years. And the defendant admitted on the stand that he had not paid taxes throughout the entire time period. So the record was there of what the tax liability was. The general verdict in this case doesn't make clear which conduct caused losses and which conduct didn't cause losses. And under the Huey and McHenry cases, isn't that problematic as far as the restitution order is concerned? I'm not familiar with that case, Your Honor. I can't say for sure. But I think on the facts of this case, the judge was certainly within his discretion. We're on plain error review. It certainly was not plain error given all of the evidence of tax loss in the record. There was an affidavit from an IRS officer that added up to that amount. Is that right? That's correct, Your Honor. And the defendants filed sort of revised taxes late in the investigation when they were trying to sort of come clean. And so the agent used those numbers to calculate what they should have paid in all of the years that they didn't pay and then calculated statutory interest on that. And then they didn't object, right? So I guess my understanding was you had this affidavit. If they'd objected and said, this isn't, you need more evidence or explain this, you could have presented more at that point? And in fact, there was actually quite a bit more restitution that we could have sought initially. We picked six specific counts and went with those. But it was never challenged in any way. And no one asked for more information. Thank you, Your Honor. I suppose, counsel, I think your time is up. So the case just argued is submitted. Thanks very much.
judges: M. Smith, Friedland, Rakoff